## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| The Residences at Quarry Walk, LLC <br><br> Plaintiff, <br><br> v. <br><br> New York Marine and General Insurance Company and Pennsylvania Manufacturers' Association Insurance Company, <br><br> Defendants. | Civil Action No.: <br><br> **JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

The Plaintiff, The Residences at Quarry Walk, LLC, by and through its attorneys, Saxe Doernberger & Vita, P.C., alleges upon information and belief as follows:

## <u>PARTIES</u>

1.      Plaintiff, The Residences at Quarry Walk, LLC ("Quarry Walk") is a limited liability company in the State of Connecticut.

2.      Quarry Walk is the entity that owns and operates the premises located at 500 Boulder Pass, Seymour, CT 06478.

3.      Defendant New York Marine and General Insurance Company ("NY Marine") was and still is an insurance company licensed to transact business in the State of Connecticut.

4.      Defendant Pennsylvania Manufacturers' Association Insurance Company ("PA Manufacturers") was and still is an insurance company licensed to transact business in the State of Connecticut.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

6.     Venue is appropriate in this district pursuant to 28. U.S.C. Sec. 1391(b)(2) because it is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and/or a substantial part of property that is the subject of the action is situated.

## FACTUAL ALLEGATIONS

7.     At all times relevant hereto, Quarry Walk engaged the services of Haynes Development Inc. ("Haynes Development") to design and construct a three-story residential structure at 500 Boulder Pass, Seymour, CT 06478 (the "Premises").

8.     At all times relevant hereto, Haynes Development contracted with Quarry Walk to construct the Premises.

9.     With the assistance of insurance broker, USI Insurance Services, Quarry Walk purchased and paid premium for a Commercial Inland Marine Policy (hereinafter referred to individually as "Policy" and collectively as "Policies") from each NY Marine and PA Manufacturers (collectively referred to hereinafter as the "Insurers").

10.     With the assistance of insurance broker, USI Insurance Services, Quarry Walk purchased and paid premium for extension policies from each NY Marine and PA Manufacturers (hereinafter referred to as "Extension Policies").

11.     The policy issued by NY Marine is identified by policy number IM2019BR00601 and was effective from June 20, 2019 to April 20, 2020 ("NY Marine Policy").  A copy of the NY Marine Policy is attached hereto as **Exhibit A**.

12.     With the assistance of insurance broker, USI Insurance Services, Quarry Walk secured an extension to the NY Marine Policy that was effective from October 31, 2020 to October 31, 2021.  A copy of the NY Marine Policy extension is attached hereto as **Exhibit B.**

13.     The policy issued by PA Manufacturers is identified by policy number 811901-9873654 and was effective from June 20, 2019 to April 20, 2020 ("PA Manufacturers Policy").  A copy of the PA Manufacturers Policy is attached as **Exhibit C**.

14.     With the assistance of insurance broker, USI Insurance Services, Quarry Walk secured an extension to the PA Manufacturers Policy that was effective from October 31, 2020 to October 31, 2021. A copy of the PA Manufacturers Policy extension is attached hereto as **Exhibit D.**

15.     Quarry Walk procured the Policies and extensions to protect the Premises from various perils during the term of construction.

16.     Haynes Development Inc. is named as an additional named insured in each of the Policies and the extensions referenced herein.

17.     Each of the Insurers was responsible for drafting the Policies and the extension in accordance with the parties' intent.

18.     The application for the Insurers' Policies is evidence of the parties' intent. The application is attached as **Exhibit E.**

19.     The application for the Policies identifies both parties' intent that Quarry Walk have coverage for "Soft Costs" with a limit of $545,000.

20.     The Delay in Completion Schedule in the Policies and Extension Policies contains a list of coverages that includes "Additional Construction Expenses" and "Soft Costs" arranged on the page, one atop the other.

21.    The box to the extreme left of "Additional Construction Expenses" is checked, while the box to the extreme left of "Additional Soft Costs" is not checked.

22.    The limit for "Additional Construction Expenses" in the Policies is $545,000.

23.    Quarry Walk and the Insurers intended that the Policies and extensions would include "Additional Soft Costs" coverage with a limit of $545,000.

24.    The checking of the box by Defendants beside "Additional Construction Expenses" instead of the box beside "Additional Soft Costs" is a scrivener's error by Defendants.

25.    Quarry Walk and the Defendants failed to identify and correct the error at the time it was made.

26.    On numerous occasions, Quarry Walk requested that Defendants reform the Policies to correct the error.

27.    On numerous occasions, agents and representatives of USI Insurance Services requested that Defendants reform the Policies to correct the error.

28.    Due to the parties' mutual mistake in allowing the "Additional Soft Costs" box to remain unchecked, in allowing the "Additional Construction Expenses" box to be checked, and failing to correct the error at the time it was made, the Policies should be reformed to reflect the parties' intent and provide for "Additional Soft Costs" coverage with a limit of $545,000.

29.    Alternatively, due to the unilateral mistake by Plaintiff, coupled with inequitable conduct on the part of the Insurers, in allowing the "Additional Soft Costs" box to remain unchecked, in allowing the "Additional Construction Expenses" box to be checked, and failing to correct the error at the time it was made, the Policies should be reformed to reflect the parties' intent and provide for "Additional Soft Costs" coverage with a limit of $545,000.

## Policies

30.     Each Policy provides that each Insurer pays its proportional share of the loss.

31.     Each Policy includes a limit of $12,168,000.

32.     Pursuant to the Contributing Insurance Endorsement, NY Marine and PA Manufacturers each cover 50% of the covered loss up to the limit of $12,168,000.

33.     Each Policy provides for Builders' Risk Coverage, delay in completion coverage, and loss of rental income coverage

34.     Each Policy requires the Insured to protect the property.

35.     The Policies provide, in pertinent part:

> "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss.
>
> i.   Payment of Reasonable Costs – "We" do pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property.

36.     Each Policy defines "delay" as ". . . an interruption in the construction, erection, or fabrication of a 'building or structure' caused by a covered peril."

37.      Each Policy defines "delay period" as ". . . the period of time the completion of the construction, erection or fabrication of a covered 'building or structure' is 'delayed' as a result of direct physical loss or damage caused by a covered peril to property covered under the Builders' Risk Coverage form to which this coverage part is attached."

38.     Each Policy defines "Additional Construction Expenses" as follows: "Coverage -- 'We' pay for additional construction expenses incurred during the 'delay period'".

39.    "Additional Construction Expenses" include advertising, design fees, financing lease administration, professional fees, and permit fees.

40.    Each Policy defines "Additional Soft Costs" as follows: "necessary and reasonable costs relating to the construction, erection, or fabrication of a covered 'building or structure' that are over and above those costs that would have been incurred had there been no 'delay period.'"

41.    Each Policy further defines "Additional Soft Costs" as follows: "Coverage --'We' pay for soft costs incurred during the 'delay period.'"

42.    Additional Soft Costs include interest payments, realty taxes, lease expenses, and insurance premiums.

43.    Each Policy provides Replacement Cost coverage.

44.    Replacement Cost is defined as follows:

1) the necessary and reasonable costs of material and labor incurred to repair or replace, without deduction for depreciation, the part of the covered property that sustains direct physical loss or damage;

2) the reasonable overhead and profit related to the covered property that sustains direct physical loss or damage but not to exceed the overhead and profit being charged for the construction, erection, or fabrication of a covered "building or structure" in accordance with the construction contracts; and

3) other related construction costs and expenses that are re-incurred to repair or replace the part of the covered property that sustains direct physical loss or damage but only if such costs have been included as part of the "limit" for a covered "building or structure."

45.    The Policies provide Supplemental Coverages that include Expediting Expenses.

46.    Expediting Expenses include, but are not limited to, additional:

1) labor or overtime;

2) transportation costs and storage expense;

3) expense to rent additional equipment; and

6

4) similar construction expenses.

47.     The Policies provide for a 100% Coinsurance penalty.

48.     The Coinsurance penalty applies if the policy limit is less than 100% of the estimated completed value of the covered "building or structure."

**The Loss**

49.     On July 27, 2020, Quarry Walk sustained a fire at the Premises (the "Loss").

50.     As a result of the Loss, the building sustained significant fire, smoke, water, and mold damage, among other damage.

51.     At the time of the Loss, Haynes Development had nearly completed construction of the Premises.

52.     On or about July 29, 2020, Quarry Walk provided timely notice to the Insurers of the Loss.

53.     Thereafter, Quarry Walk made a claim for payment under the Policies.

54.     At the time of the Loss, Defendants NY Marine and PA Manufacturers insured the Premises, and consequently, the Loss.

55.     After the Loss, Quarry Walk immediately took measures to protect the Premises and mitigate water, fire, and smoke damage to the Premises.

56.     After the Loss, Quarry Walk employed and paid Haynes Development to perform work to protect the Premises including, but not limited to, securing tarps, temporary repairs, waterproofing, salvaging items for storage, and inspections of the structure.

57.     Quarry Walk's agreement with and payment to Haynes Development included labor and overhead and profit at a customary 20% rate.

58.     The Insurers refused to fully reimburse Quarry Walk for payments to Haynes Development for labor and overhead and profit.

59.     Quarry Walk, through its designated agents, coordinated and communicated with Defendants in connection with supplying proof of damages concerning the Loss.

60.     Quarry Walk employed public adjustor Sabel Adjusters, LLC to assist with evaluating and valuing damage to the Premises resulting from the Loss.

61.     The Insurers utilized the services of North American Risk Services ("NARS") to adjust the Loss.

62.     At all times hereinafter mentioned, NARS was an authorized agent of the Insurers.

63.     The Insurers utilized the services of J.S. Held to value the physical damage to the Premises and to coordinate and control remediation of the smoke, water, fire, and mold damage to the Premises.

64.     At all times hereinafter mentioned, J.S. Held was an authorized agent of the Insurers.

65.     J.S. Held eventually stopped providing all services in connection with the remediation and repair work to the Premises.

66.     Haynes Development contracted directly with ServPro "to perform any and all necessary cleaning and/or restoration services," and served as ServPro's general contractor.

67.     Quarry Walk incurred overhead and profit expense associated with its general contractor Haynes Development's services in connection with the remediation work performed by ServPro.

68.     The Insurers refused to reimburse Quarry Walk for payment of overhead and profit expense Quarry Walk paid to Haynes Development.

69. Quarry Walk incurred labor costs plus overhead and profit incurred for Haynes Development's labor in connection with mitigation, remediation, and construction of the Premises from September 30, 2020 through March 21, 2021.

70. The Insurers refused to reimburse Quarry Walk for payment of labor plus overhead and profit expense that Quarry Walk paid to Haynes Development.

71. At the Insurers' request, Quarry Walk supplied them with an itemized and detailed job cost summary for building costs, along with supporting documentation, through the date of the Loss.

72. The job cost summary unequivocally demonstrates that the total cost incurred through the date of the Loss was substantially less than the limits of the Policies.

73. The Insurers, through their agent NARS, nevertheless assessed a sizeable coinsurance penalty on Quarry Walk.

74. Quarry Walk, through its agent, communicated with a representative of NARS and demonstrated that NARS incorrectly assessed such coinsurance penalty on Quarry Walk.

75. By email communication dated June 8, 2021 from NARS to a representative of Quarry Walk, NARS and the Insurers agreed that no coinsurance penalty would be applied.

76. Despite such admission, the Insurers continue to assess the coinsurance penalty against the limits of the Policies.

77. At all times, NARS oversaw and authorized J.S. Held's conduct.

78. NARS and J.S. Held (hereinafter "the Insurers' Agents") unreasonably delayed adjustment of Quarry Walk's claim.

79. The Insurers' Agents committed the following acts against the interests of Quarry Walk:

a.  Continually seeking documents from Quarry Walk that were not maintained by Quarry Walk in the usual course of its business;

b.  Using personnel who frustrated and delayed the valuation of damages process;

c.  Delaying the creation and production of itemized lists of damages;

d.  Generating summary reports of damages in lieu of itemized lists;

e.  Curtailing the scope of work necessary for remediation of the Premises to save the Insurers money;

f.  Prematurely removing the remediation contractor from the Premises causing additional damage to the Premises, in the form of mold, and delaying commencement of reconstruction.

80.     The Insurers' Agents unduly delayed the reconstruction of the Premises by failing and refusing to release sufficient monies from the Policies' limits for post-Loss construction to commence.

81.     The Insurers' Agents unduly delayed the reconstruction of the Premises by failing and refusing to arrive at a fair and reasonable value for the damages incurred by Quarry Walk  on a timely basis.

82.     The Insurers' Agents unduly delayed the commencement of reconstruction of the Premises by conditioning issuance of insurance funds to Quarry Walk on execution of a release of all claims.

83.     The Insurers only made partial payments under the Builder's Risk coverages of the Policies.

84.     When the Insurers finally released partial insurance proceeds to Quarry Walk under the Policies, NARS failed to provide an itemization of the specific categories of coverages under the Policies to which such payments applied.

85.     Even when Quarry Walk, by its agents, demanded that such itemization occur, the Insurers' Agents also failed to provide such information.

86.     The Insurers have not paid all undisputed amounts based on the Builders' Risk Coverages under the Policies.

87.     As a result of the delay caused by the Insurers and the Insurers' Agents, Quarry Walk sustained additional damages that would not have accrued but for the actions of the Insurers and the Insurers' Agents.

88.      Quarry Walk sustained additional damages outside the limits of the Policies.

89.     These damages include, but are not limited to, lost rental income, interest expense, increased material costs, property taxes, insurance premiums for extensions to the Policies, and advertising expenses.

90.     The Insurers and the Insurers' Agents worked together to prevent a timely and fair adjustment of Quarry Walk's claim.

91.     The Insurers operated through authorized agent, Matson, Driscoll & Damico, LLP ("MDD"), a forensic accounting firm, to adjust Quarry Walk's claim under the Delay in Completion coverages of the Policies.

92.     Quarry Walk used the services of Imperium Consulting Group to assist in gathering and submitting the Delay in Completion claim to the Insurers.

93.     As part of the Delay in Completion claim, Quarry Walk submitted proof of damages falling under the Soft Costs coverages of the Policies.

94.     The Insurers refused to release insurance proceeds for Quarry Walk's claims under the Soft Costs provisions of the Policies.

95.     MDD immediately delayed the payment of coverage under the Policies by demanding documents that were not material to the assessment of the claim.

96.     Despite that the Insurers have not denied Quarry Walk's Delay in Completion coverages, to date, the Insurers have refused to release insurance proceeds pertinent to the Delay in Completion Schedule of the Policies.

97.     The Insurers have not paid all undisputed amounts based on the Delay in Completion coverages under the Policies.

## COUNT ONE - BREACH OF CONTRACT
## AS TO DEFENDANT NY MARINE

98.     Paragraphs 1-97 of this Complaint are hereby incorporated as if fully set forth herein.

99.     The NY Marine Policy is a binding and enforceable contract between Quarry Walk and NY Marine.

100.    Quarry Walk is a Named Insured under the NY Marine Policy.

101.    At all times relevant, the NY Marine Policy was in full effect.

102.    The NY Marine Policy covers the Loss.

103.    NY Marine wrongfully refused to fully cover the Loss.

104.    NY Marine wrongfully withheld insurance proceeds due to Quarry Walk for the covered losses and damages to the Premises under the Policies.

105.    NY Marine's refusal and/or failure to pay covered claims constitutes a breach of the NY Marine Policy.

106.    As a result of NY Marine's breach, Quarry Walk has been and continues to be damaged.

## COUNT TWO - BREACH OF CONTRACT
## AS TO DEFENDANT PA MANUFACTURERS

107.    Paragraphs 1-106 of this Complaint are hereby incorporated as if fully set forth herein.

108.    The PA Manufacturers Policy is a binding and enforceable contract between Quarry Walk and PA Manufacturers.

109.    Quarry Walk is a Named Insured under the PA Manufacturers Policy.

110.    At all times relevant, the PA Manufacturers Policy was in full effect.

111.    The PA Manufacturers Policy covers the Loss.

112.    PA Manufacturers wrongfully refused to fully cover the Loss.

113.    PA Manufacturers wrongfully withheld insurance proceeds due to Quarry Walk for the covered losses and damages to the Premises under the Policies.

114.    PA Manufacturers refusal and/or failure to pay covered claims constitutes a breach of the PA Manufacturers Policy.

115.    As a result of PA Manufacturers breach, Quarry Walk has been and continues to be damaged.

## COUNT THREE - BREACH OF THE COVENANT OF GOOD FAITH AND FAIR
## DEALING (BAD FAITH) AS TO DEFENDANT NY MARINE

116.    Paragraphs 1-115 of this Complaint are hereby incorporated as if fully set forth herein.

117.    At all relevant times, NY Marine was required to act in good faith and to treat Quarry Walk and its agents fairly and reasonably.

13

118.    Throughout the investigation and adjustment of Quarry Walk's claim, NY Marine, by and through its agents, employees, and/or representatives, acted in bad faith and did so in one or more of the following ways:

a.   inadequately adjusting the scope of repairs to address Quarry Walk's loss and damages with the intent to limit payments, to Quarry Walk's detriment;

b.   intentionally undervaluing the damages and the cost for reconstruction at the Premises;

c.   delaying adjustment of the Loss by demanding documents not maintained by Quarry Walk;

d.   delaying adjustment of the Loss by failing to itemize the value of the Loss;

e.   failing to timely supply Quarry Walk with an explanation under which provisions of the Policy NY Marine partially paid the claim;

f.   employing disruptive personnel who refused to assess damages to the Premises in a fair manner;

g.   unduly delaying the selection of a remediation company in an effort to reduce the amount of insurance proceeds payable to Quarry Walk;

h.   compromising remediation of the Premises by altering the remediation protocols in order to save NY Marine money;

i.   prematurely curtailing remediation work to save NY Marine money;

j.   causing additional mold to grow by prematurely stopping remediation work at the Premises;

k.   conditioning release of undisputed insurance proceeds to Quarry Walk on execution of a release of all claims; and

l.   intentionally withholding proper payment under the NY Marine Policy with no explanation to Quarry Walk.

119.    As a result of NY Marine's reckless, intentional, and malicious conduct, Quarry Walk has suffered and continues to suffer a loss of money and property.

## COUNT FOUR - BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING (BAD FAITH) AS TO DEFENDANT PA MANUFACTURERS

120.   Paragraphs 1-119 of this Complaint are hereby incorporated as if fully set forth herein.

121.   At all relevant times, PA Manufacturers was required to act in good faith and to treat Quarry Walk fairly and reasonably.

122.   Throughout the investigation and adjustment of Quarry Walk's claim, PA Manufacturers, by and through its agents, employees, and/or representatives, acted in bad faith and did so in one or more of the following ways:

    a. inadequately adjusting the scope of repairs to address Quarry Walk's loss and damages with the intent to limit payments, to Quarry Walk's detriment;

    b. intentionally undervaluing the damages and the cost for reconstruction at the Premises;

    c. delaying adjustment of the Loss by demanding documents not maintained by Quarry Walk;

    d. delaying adjustment of the Loss by failing to itemize the value of the Loss;

    e. failing to timely supply Quarry Walk with an explanation under which provisions of the Policy PA Manufacturers partially paid the claim;

    f. employing disruptive personnel who refused to assess damages to the Premises in a fair manner;

    g. unduly delaying the selection of a remediation company in an effort to reduce the amount of insurance proceeds to Quarry Walk;

    h. compromising the remediation of the Premises by altering the remediation protocols in order to save PA Manufacturers money;

    i. prematurely curtailing remediation work to save PA Manufacturers money;

    j. causing additional mold to grow by prematurely stopping remediation work at the Premises;

k.   conditioning release of undisputed insurance proceeds to Quarry Walk on execution of a release of all claims;

l.   intentionally withholding proper payment under the PA Manufacturers Policy with no explanation to Quarry Walk.

123.   As a result of PA Manufacturers reckless, intentional, and malicious conduct, Quarry Walk has suffered and continues to suffer a loss of money and property.

## COUNT FIVE- VIOLATION OF THE CONNECTICUT UNFAIR INSURANCE PRACTICES ACT BY AND THROUGH THE CONNECTICUT UNFAIR TRADE PRACTICES ACT AS TO DEFENDANT NY MARINE

124.   Paragraphs 1-123 of this Complaint are hereby incorporated as if fully set forth herein.

125.   NY Marine and its agents engaged in the conduct of trade or commerce in the State of Connecticut; specifically the business of insurance.

126.   At all relevant times, NY Marine and its agents were prohibited by Conn. Gen. Stat. § 41-110 *et seq.* from engaging in unfair and deceptive acts or practices in the conduct of its business.

127.   NY Marine, by and through its agents, employees, and/or representatives, has engaged in unfair and deceptive acts and practices prohibited by Conn. Gen. Stat. § 42-110 *et seq.* and has violated Conn. Gen. Stat. § 38a-816 *et seq.*

128.   NY Marine, by and through its agents, employees, and/or representatives, have and continue to commit the acts referred to below as to Quarry Walk and as to other insureds and policyholders of NY Marine, as to constitute a general business practice of insurance misconduct in violation of Conn. Gen. Stat. § 38a-816 *et seq.* by:

a.   Misrepresenting pertinent facts and/or insurance policy provisions relating to coverage issues.

      b. Failing to acknowledge and act with reasonable promptness upon communications with respect to claims arising under insurance policies.

          i. Specifically, by refusing to provide Quarry Walk's claims for full coverage under the NY Marine Policy to reconstruct the Premises.

          ii. Specifically, by refusing to provide a detailed itemization of the claims paid to date.

      c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

          i. Specifically, by altering the remediation protocols and prematurely stopping remediation work causing additional damages to the Premises and causing undue delay in the reconstruction process.

          ii. Specifically, by refusing to cooperate in assessment of the building damages evaluation.

          iii. Specifically, by refusing to pay the undisputed portions of the claim.

          iv. Specifically, by conditioning payment of the undisputed portions of the claim on execution by Quarry Walk of a full release of claims.

      d. Failing to pay claims without conducting a reasonable investigation based upon all available information.

      e. Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed.

      f. Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims which liability has become reasonably clear.

      g. Compelling Quarry Walk to institute litigation to recover amounts due under the NY Marine Policy by offering substantially less than the amounts ultimately recovered in similar claims made by other insureds.

      h. Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlement under other portions of the insurance policy coverage.

          i. Specifically, by conditioning payment of the undisputed portions of the claim on execution by Quarry Walk of a release of all claims.

     i.   Failing to promptly provide a reasonable explanation of the basis for the denial of the claim in the insurance policy in relation to the facts or applicable law.

          i.   Specifically, by NY Marine refusing to release an advance on the insurance proceeds for the Delay in Completion claim when in possession of proof supporting the claim.

129.    NY Marine, by and through its agents, employees, and/or representatives, has and continues to commit the acts referred to above as to Quarry Walk and as to other insureds and policyholders of NY Marine with such a frequency as to constitute a general business practice of insurance misconduct in violation of Conn. Gen. Stat. § 38a-816 *et seq.*

130.    NY Marine's general business practice of insurance misconduct is further seen in the actions and lawsuits filed against NY Marine as well as its parent companies, affiliates, subsidiaries, holding companies, and agents and by complaints filed with the State of Connecticut Insurance Department concerning NY Marine.

131.    As a result of NY Marine's actions as set forth above, Quarry Walk has suffered and will continue to suffer a loss of money.

### COUNT SIX- VIOLATION OF THE CONNECTICUT UNFAIR INSURANCE PRACTICES ACT BY AND THROUGH THE CONNECTICUT UNFAIR TRADE PRACTICES ACT AS TO DEFENDANT PA MANUFACTURERS

132.    Paragraphs 1-131 of this Complaint are hereby incorporated as if fully set forth herein.

133.    PA Manufacturers and its agents engaged in the conduct of trade or commerce in the State of Connecticut, specifically the business of insurance.

134.    At all relevant times, PA Manufacturers and its agents were prohibited by Conn. Gen. Stat. § 41-110 *et seq.* from engaging in unfair and deceptive acts or practices in the conduct of its business.

135.    PA Manufacturers, by and through its agents, employees, and/or representatives, have engaged in unfair and deceptive acts and practices prohibited by Conn. Gen. Stat. § 42-110 *et seq.* and has violated Conn. Gen. Stat. § 38a-816 *et seq.*

136.    PA Manufacturers, by and through its agents, employees, and/or representatives, have and continue to commit the acts referred to below as to Quarry Walk and as to other insureds and policyholders of PA Manufacturers as to constitute a general business practice of insurance misconduct in violation of Conn. Gen. Stat. § 38a-816 *et seq.* by:

    a.  Misrepresenting pertinent facts and/or insurance policy provisions relating to coverage issues.

    b.  Failing to acknowledge and act with reasonable promptness upon communications with respect to claims arising under insurance policies.

        i.  Specifically, by refusing to provide Quarry Walk claims for full coverage under the PA Manufacturers Policy to reconstruct the Premises.

        ii.  Specifically, by refusing to provide a detailed itemization of the claims paid to date.

    c.  Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

        i.  Specifically, by altering the remediation protocols and prematurely stopping remediation work causing additional damages to the Premises and causing undue delay in the reconstruction process.

        ii.  Specifically, by refusing to cooperate in assessment of the building damages evaluation.

        iii.  Specifically, by refusing to pay the undisputed portions of the claim.

        iv.  Specifically, by conditioning payment of the undisputed portions of the claim on execution by Quarry Walk of a full release of claims.

    d.  Failing to pay claims without conducting a reasonable investigation based upon all available information.

e.  Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed.

f.  Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims which liability has become reasonably clear.

g.  Compelling Quarry Walk to institute litigation to recover amounts due under the PA Manufacturers Policy by offering substantially less than the amounts ultimately recovered in similar claims made by other insureds.

h.  Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlement under other portions of the insurance policy coverage.

    i.  Specifically, by conditioning payment of the undisputed portions of the claim on execution by Quarry Walk of a release of claims.

i.  Failing to promptly provide a reasonable explanation of the the basis for denial of claim in the insurance policy in relation to the facts or applicable law.

    i.  Specifically, by PA Manufacturers refusing to release an advance on the insurance proceeds for the Delay in Completion claim when in possession of proof supporting the claim.

137.    PA Manufacturers, by and through its agents, employees, and/or representatives, has and continues to commit the acts referred to above as to Quarry Walk and as to other insureds and policyholders of PA Manufacturers with such a frequency as to constitute a general business practice of insurance misconduct in violation of Conn. Gen. Stat. § 38a-816 *et seq.*

138.    PA Manufacturers' general business practice of insurance misconduct is further seen in the actions and lawsuits filed against PA Manufacturers as well as its parent companies, affiliates, subsidiaries, holding companies, and agents and by complaints filed with the State of Connecticut Insurance Department concerning PA Manufacturers.

139.    As a result of PA Manufacturers actions as set forth above, Quarry Walk has suffered and will continue to suffer a loss of money.

**COUNT SEVEN- REFORMATION BASED ON MUTUAL MISTAKE**

**OR UNILATERAL MISTAKE AS TO DEFENDANT NY MARINE**

140.    Paragraphs 1-139 of this Complaint are hereby incorporated as if fully set forth herein.

141.    This Count is for reformation based on mutual mistake or, alternatively, unilateral mistake.

142.    At the time of entering into the Policy, Quarry Walk and NY Marine intended that Quarry Walk have coverage for "Soft Costs" with a limit of $545,000.

143.    As a result of the parties' mutual mistake, the NY Marine Policy instead provides for "Additional Construction Expenses" with a limit of $545,000.

144.    Alternatively, as a result of Quarry Walk's unilateral mistake, and the inequitable conduct on the part of NY Marine, the NY Marine Policy instead provides for "Additional Construction Expenses" with a limit of $545,000.

145.    It is equitable for this Court to reform the NY Marine Policy to replace "Additional Construction Expenses" coverage with "Soft Costs" coverage with a limit of $545,000.

146.    The reformation will result in the NY Marine Policy accurately reflecting the parties' agreement and intent as to coverages in the Policy.

**COUNT EIGHT - REFORMATION BASED ON MUTUAL MISTAKE
OR UNILATERAL MISTAKE AS TO DEFENDANT PA MANUFACTURERS**

147.    Paragraphs 1-146 of this Complaint are hereby incorporated as if fully set forth herein.

148.    This Count is for reformation based on mutual mistake or, alternatively, unilateral mistake.

149.    At the time of entering into the Policy, Quarry Walk and PA Manufacturers intended that Quarry Walk have coverage for "Soft Costs" with a limit of $545,000.

150.   As a result of the parties' mutual mistake, the PA Manufacturers Policy instead provides for "Additional Construction Expenses" with a limit of $545,000.

151.   Alternatively, as a result of Quarry Walk's unilateral mistake, and the inequitable conduct on the part of PA Manufacturers, the PA Manufacturers Policy instead provides for "Additional Construction Expenses" with a limit of $545,000.

152.   It is equitable for this Court to reform the PA Manufacturers Policy to replace "Additional Construction Expenses" coverage with "Soft Costs" coverage with a limit of $545,000.

153.   The reformation will result in the PA Manufacturers Policy accurately reflecting the parties' agreement and intent as to coverages in the Policy.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

1.   Compensatory damages;

2.   Financial loss damages;

3.   Punitive damages;

4.   Attorney's fees and costs, pursuant to Federal Rule of Civil Procedure 54 and other applicable law

5.   Damages pursuant to Conn. Gen. Stat. § 42-110 *et seq.* and § 38a-816 *et seq.*;

6.   Reformation of the NY Marine Policy to replace "Additional Construction Expenses" coverage with "Soft Costs" coverage with a limit of $545,000;

7.   Reformation of the PA Manufacturers Policy to replace "Additional Construction Expenses" coverage with "Soft Costs" coverage with a limit of $545,000;

8.   Interest pursuant to Conn. Gen. Stat. § 37-3a; and

9.    Any other relief that this Court deems fair, just, and equitable.

## JURY DEMAND

The Residences at Quarry Walk, LLC demands a trial by jury on all issues so triable.

Dated this 11th day of July 2022, at Trumbull, Connecticut.

THE PLAINTIFF,
THE RESIDENCES AT QUARRY WALK, LLC

By:    _____
Tracy A. Saxe, Esq. (ct06031)
Eve-Lynn Gisonni, Esq. (ct31271)
Jasjeet Sahani, Esq. (ct31245)
TSaxe@sdvlaw.com
EGisonni@sdvlaw.com
JSahani@sdvlaw.com
Saxe Doernberger & Vita, P.C.
35 Nutmeg Drive, Suite 140
Trumbull, Connecticut 06611
Tel.:    (203) 287-2100
Fax:    (203) 287-8847