UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Residences at Quarry Walk, LLC, : | |
| : | |
|    Plaintiff, : | |
| : | |
| v. : | CASE NO. 3:22-cv-871 (JBA) |
| : | |
| New York Marine and General Insurance : | |
| Company and Pennsylvania : | |
| Manufacturers' Association Insurance : | |
| Company, : | |
| : | |
|    Defendants. : | |

ORDER

Defendants, New York Marine and General Insurance and Pennsylvania Manufacturers' Association Insurance Company, seek to compel an appraisal pursuant to the insurance policies they have with Plaintiff, Residences at Quarry Walk, LLC. (Dkt. #35) Defendants claim that, in essence, this case simply involves a dispute over the amount of losses suffered by Plaintiff due to Plaintiff's building catching on fire. Defendants argue that compelling an appraisal will resolve factual disputes over the amount of Plaintiff's loss, and promote judicial economy by streamlining any issues that remain for trial. According to Defendants, the insurance policies provide an express appraisal process if and when the Insurer and Insured disagree over the amount of the loss. Plaintiff argues that Defendants waived the appraisal provision because they waited too long to demand an appraisal and Plaintiff would suffer prejudice if an appraisal is ordered at this time because of the extensive discovery that has been conducted. (Dkt. #50) Plaintiff also argues that all the disputed issues in this case involve coverage, not valuation, and thus are inappropriate for an appraisal.

1

After reviewing the briefs, this Court held an oral argument on April 6, 2023, and took the arguments of the parties under advisement. (Dkt. #84) After thorough consideration, this Court GRANTS the defendants' Motion to Compel an Appraisal.

I. Legal Standard:

"[B]oth federal law and Connecticut law strongly favor arbitration as a means of resolving disputes with limited involvement from heavily-burdened courts." *Singleton v. Grade A Mkt., Inc.*, 607 F. Supp. 2d 333, 339 n.3 (D. Conn. 2009). Arbitration, however, "is a creature of contract . . . [and therefore,] [a] person can be compelled to arbitrate a dispute only if . . . he has agreed to do so . . . ." *Discuillo v. Allstate Ins. Co.*, No. 3:17-CV-00234-MPS, 2018 WL 3715275, at *3 (D. Conn. Aug. 3, 2018) (citing *Stack v. Hartford Distribs., Inc.*, 179 Conn. App. 22, 28 (2017) (alteration in original)). "The term 'arbitrate' need not appear in the contract in order to invoke the benefits of the FAA." *Milligan v. CCC Info. Servs. Inc.*, 920 F.3d 146, 151–52 (2d Cir. 2019). "Similarly, it is not dispositive that an agreement fails to label the independent third party's conclusions 'final' or 'binding,' so long as the parties' intent in that regard is clear from the language of their contract. *Id.* at 152. A contractual provision that "clearly manifests an intention by the parties to submit certain disputes to a specified third party for binding resolution" is arbitration within the meaning of the FAA. *Id.*

"Under Connecticut law, an appraisal clause contained in an insurance policy 'constitutes an agreement to arbitrate and falls within the ambit of [Connecticut's] arbitration statutes.'" *Ice Cube Bldg., LLC v. Scottsdale Ins. Co.*, No. 3:17-CV-973 (VAB), 2018 WL 3025037, at *2 (D. Conn. June 18, 2018). An appraisal is appropriate not to resolve legal questions, but rather to address "factual disputes over the amount of loss for which an insurer is liable." *Milligan*, 920

F.3d at 153 (2d Cir. 2019). When an insurer concedes the existence of a covered peril to an insured's premises, a dispute as to the insurer's adjusted amount of loss presents a factual question to be resolved by an appraisal panel. *Klass v. Liberty Mut. Ins. Co.*, 341 Conn. 735, 743 (2022).

"A party can waive its contractual right to arbitration by actively participating in a lawsuit or taking other action inconsistent with that right." *Discuillo*, 2018 WL 3715275, at *4. The key to a waiver analysis is prejudice. "Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." *Id.* "The Second Circuit has recognized that prejudice may result from, among other things, 'excessive cost and time delay,' which is typically accompanied by substantial motion practice or discovery. *Id.*

II. Discussion

Defendants argue that most of the disagreement with Plaintiff in this case concerns the amount of the loss paid by Insurers to Plaintiff under the insurance policies. (Dkt. #35-1 at 3) The insurance policies have an appraisal clause that expressly states that if either party does "not agree on the amount of the loss or the value of the covered property, either party may demand that these amounts be determined by appraisal." (*Id.*) Because there is a factual dispute over the amount of the loss for which the Insurer is liable, Defendants contend that an appraisal is appropriate.

The claim components in dispute are Overhead & Profit, Direct Repair Costs/Labor Claim, Loss of Rental Income, Additional Soft Costs, and Co-Insurance Penalty. Defendants concede the existence of coverage on all the disputed items, except the Additional Soft Costs claim. (Dkt. #35-1 at 12-13) Defendants agree with Plaintiff that this claim is not appropriate for appraisal because it involves a coverage issue. (Dkt. #35-1 at 17) However, Defendants argue that the coverage

dispute regarding Additional Soft Costs does not need to be resolved prior to an appraisal on the claims for which Defendants concede coverage. Defendants also argue that they did not waive their appraisal rights because the insurance policies do not impose any time constraint for requesting an appraisal. Defendants assert that they mentioned the appraisal several times to Plaintiff's counsel, and they formally requested an appraisal after the last claim adjustment was finalized. (Dkt. #35-1 at 17-18) Furthermore, Defendants contend that Plaintiff took the position that an appraisal was "premature" because the adjustment was not completed. (*Id.*) Defendants argue that Plaintiff contributed to the delay in the adjustment by submitting necessary documents late. (Dkt. #35-1 at 18-19)

Plaintiff essentially argues that all of the disputes relate to "coverage" and all the claims are legal questions which are not appropriate for an appraisal. (Dkt. #50) Plaintiff argues that Defendants have refused to pay the entirety of Plaintiff's claimed losses over the course of the two-year period following the fire, and they intentionally chose not to seek an appraisal during this time. (Dkt. #50 at 4) Additionally, Plaintiff argues that both parties have engaged in all-encompassing litigation that includes comprehensive and expensive discovery. (*Id.*) Specifically, Plaintiff argues that it has spent well over 900 hours litigating this case, which includes preparing and serving discovery requests, as well as reviewing, objecting, and responding to Defendants' discovery requests. (Dkt. #50 at 14) Plaintiff argues that Defendants could have moved to stay the litigation and compel an appraisal much earlier in the case, and that Plaintiff will suffer prejudice if the court compels an appraisal now. Also, Plaintiff argues that bifurcating the claims in the dispute on two pathways will cost the parties more in time and monetary expenditures. (Dkt. #50 at 21)

It is apparent that Defendants concede coverage over various claim components brought by Plaintiff. These claims include Overhead & Profit, Direct Repair Costs/Labor Claim, Loss of Rental Income, and the Co-Insurance Penalty. The parties agree that the insurance policies are enforceable contracts. Therefore, the appraisal clause in each policy governs the resolution of this motion. The policies state:

> If "you" and "we" do not agree on the amount of the loss or the value of covered property, either party may demand that these amounts be determined by appraisal.
>
> If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.
>
> The appraisers will then determine and state separately the amount of each loss.
>
> The appraisers will also determine the value of covered property items at the time of the loss, if requested. If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three, sets the amount of the loss.
>
> Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and compensation of the umpire will be paid equally by "you" and "us".

(Dkt. #35-1 at 6-7). In this matter, the Plaintiff and the Defendants do not agree on the amount of loss that was sustained by Plaintiff after Plaintiff's building caught on fire. Defendants paid less money on each claim than Plaintiff originally requested and documented. Because Defendants concede that these claims are covered by the policies, the only issue is how much money should have been paid to Plaintiff. This presents a question of valuation which is appropriate for appraisal. *See Klass*, 341 Conn. at 743.

Regarding Plaintiff's argument that Defendants waived their right to the appraisal by engaging in all-encompassing discovery, the Court notes that Defendants raised the appraisal several times during the course of the litigation- including in Defendants' Answer, during meetings on August 10, 2022 and August 31, 2022, and during a meeting on October 21, 2022.  Plaintiff does not dispute this fact, but argues that Defendants "briefly referenced the Policies' appraisal provision in passing[.]" (Dkt. #50 at 17)  Plaintiff argues that Defendants could have demanded an appraisal at any time as each claim component was in dispute at various times in the last two years, however, the Court does not think that Defendants were required to make piecemeal demands for appraisal.[1]

The Court does not find that Plaintiff will suffer prejudice if the Court requires an appraisal.  First, Plaintiff was on notice that Defendants would potentially pursue an appraisal.  Second, as Defendants note, an appraisal is not self-triggering; the appraisal clause is only triggered if and when the parties disagree on the amount of the loss or the value of the covered property.  In this case, Defendants needed to obtain certain documents and make a reasonable inquiry before they could determine if there was a dispute over the loss or the value of the property.  Defendants properly demanded an appraisal after the adjustment of the last claim submitted by Plaintiff in November of 2022.  While it is true that Defendants may have realized earlier in this litigation that there was a dispute over certain elements of damages, it would have been inefficient to compel separate appraisals in a piecemeal fashion.  Finally, to the extent that Plaintiff notes that the parties engaged in all-encompassing discovery prior to the filing of Defendants' motion to compel an appraisal, the Court notes that the Plaintiff has not distinguished between the amount of time that

---

[1] During the oral argument, the plaintiff agreed that it would not have been efficient to make piecemeal demand for an appraisal or to have separate appraisals for each dispute.

was related to coverage issues, as opposed to the amount of time related to the loss or value of the property. An appraisal would not have addressed or resolved any disputes over coverage. Therefore, the time and money spent litigating the coverage issues would have been incurred whether or not Defendants sought an appraisal. Therefore, it cannot be said that the time spent in litigation was inconsistent with Defendants' right to an appraisal. In conclusion, this Court GRANTS the defendants' Motion to Compel Appraisal.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. R. 72.2. As such, it is an order of the Court unless reversed or modified by a district judge upon motion timely made.

SO ORDERED this **26th day** of **April**, 2023 at Hartford, Connecticut.

_____/s/_____

Robert A. Richardson
United States Magistrate Judge